**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:20-CV-00804-BJB-CHL**

**TANGRAM REHABILITATION NETWORK, INC.,**                           **Plaintiff,**

**v.**

**SABRA HEALTH CARE REIT, INC., et al.,**                           **Defendants.**

**MEMORANDUM OPINION & ORDER**

Before the Court is a renewed motion for leave to seal two exhibits to the response of Plaintiff Tangram Rehabilitation Network, Inc. ("Tangram") to the motion to dismiss of Defendants Sabra Health Care REIT Inc. and Sabra Texas Holdings, L.P. (collectively "Defendants"). (DN 57.) Plaintiff previously filed a motion for leave to seal the exhibits (DN 35) on February 15, 2021 that the Court denied without prejudice. (DN 41.) Defendant did not oppose the motion. (DN 40.)

Therefore, this matter is ripe for review.

**I.      BACKGROUND**

Tangram brought this action against Defendants seeking declaratory judgment and damages for breach of a lease agreement. (DN 1 at 1-2.) The alleged breach involves the application of lease provisions for appraisal procedures and confidentiality between tenant Tangram and its landlord, the Defendants. (DN 29 at 402.) When Tangram exercised its option to renew the lease for additional terms, Tangram and Defendants were unable to agree on an annual rent price. (DN 34 at 439.) In the event of such a disagreement, Tangram and Defendants would be bound by the outcome of a three-appraiser process set forth in the lease to determine fair market rent value. (DN 29 at 402.) Tangram retained Valbridge Property Advisors ("Valbridge") to

conduct valuations on its behalf and Defendants retained Valuation & Information Group ("VIG") for the same. (DN 57 at 1716.) Valbridge valued Tangram's annual fair market rent at $219,900 whereas VIG valued the same at $1,386,000, constituting a difference of greater than 10% that required the Parties to obtain a third valuation. (DN 34 at 439-40.) Valbridge and VIG appointed JLL Valuation & Advisory Services ("JLL") as the third appraiser. (*Id.*) JLL valued the annual fair market rent at $1,308,000. (*Id.*) Pursuant to the lease, the appraisal differing most in dollar amount, *i.e.*, the Valbridge appraisal, was excluded and Defendants set Tangram's annual rent at $1,306,000. (*Id.*)

Tangram asserts that VIG and JLL's appraisals did not comply with appraisal procedures set forth in the lease. Further, Tangram alleges that Defendants violated a confidentiality provision in the lease when Defendants shared Tangram's financial statements with VIG and JLL without Tangram's consent. (DN 1 at 6.) Tangram claims that instead of applying and reconciling the substantive valuation approaches outlined in the lease, VIG and JLL relied on the data in Tangram's financial statements, obtained in violation of the lease, to produce the annual rent valuations. (*Id.*)

On January 25, 2021, Defendants moved to dismiss Plaintiff's complaint. (*See* DN 29.) Plaintiff filed a response in opposition and concurrently filed a motion for leave to seal two exhibits attached to its response. (DNs 34, 35.) The exhibits in question, Exhibit 1 and Exhibit 2, are appraisal reports prepared by VIG and JLL respectively. (DN 57 at 1716.) Tangram asserts that the appraisal reports contain information gathered from Tangram's confidential financial statements that, if made public, would cause injury by giving competitors an unfair economic advantage to Tangram's detriment. (*Id.* at 1718-19.) Tangram argues that it is requesting the

narrowest possible seal to prevent the substantial risk of harm presented by public disclosure of Tangram's financial statements. (*Id.*)

## II. LEGAL STANDARD

Although the Sixth Circuit has long recognized a "strong presumption in favor of openness" regarding court records, there are certain interests that overcome this "strong presumption." *Rudd Equipment Co., Inc. v. John Deere Construction & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016) (citing *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983)). These interests include "certain privacy rights of participants or third parties, trade secrets, and national security." *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1179. The party seeking to seal the records bears a "heavy" burden; simply showing that public disclosure of the information would, for instance, harm a company's reputation is insufficient. *Id.*; *Shane Grp. Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016). Instead, the moving party must show that it will suffer a "clearly defined and serious injury" if the judicial records are not sealed. *Shane Grp. Inc.*, 825 F.3d at 307. Examples of injuries sufficient to justify a sealing of judicial records include those that could be used as "sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Comm'ns, Inc.*, 435 U.S. 589, 598 (1978).

In rendering a decision, the Court must articulate why the interests supporting nondisclosure are compelling, why the interests supporting public access are not as compelling, and why the scope of the seal is no broader than necessary. *Shane Grp. Inc.*, 825 F.3d at 306. Importantly, the presumption that the public has the right to access judicial records does not vanish simply because all parties in the case agree that certain records should be sealed. *Rudd Equipment Co., Inc.*, 834 F.3d at 595 (noting that although the defendant did not object to the plaintiff's motion to seal, his lack of objection did not waive the public's First Amendment and common law right

of access to court filings); *Shane Grp. Inc.*, 825 F.3d at 305 ("A court's obligation to keep its records open for public inspection is not conditioned on an objection from anybody.").

## III.   ANALYSIS

Upon review, the Court finds that the balance of interests weighs against the requested redactions in Exhibit 1 and Exhibit 2 with one exception in Exhibit 1 discussed more fully below. Though Tangram has established a privacy interest, it is not a particularly strong one; the information falls outside the few recognized categories of information that are "typically enough to overcome the presumption of access." *Shane Grp. Inc.*, 825 F.3d at 308 (referring to "trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault)") (citation and quotations omitted). Tangram's request relies primarily on the privacy interest recognized in financial records. *SMA Portfolio Owner, LLC v. Corporex Realty & Investment, LLC*, 2014 WL 12650589, at *3 (W.D. Ky. Apr. 18, 2014) ("Indeed, it is undisputed that a person or entity possesses a 'justifiable expectation' of privacy that their names and financial records not be revealed to the public") (citation omitted). However, Tangram fails to provide any specific reason why disclosure of its financial data would result in concrete economic harm other than its conclusory assertion that public disclosure would allow its competitors to "[obtain] an unfair advantage" and cause appraisers to "[consider] Tangram's financial statements when issuing appraisals." (DN 57 at 1717-18.) Instead, Tangram points to the lease's confidentiality provisions and its efforts to maintain confidentiality to emphasize Tangram's perceived risk of harm in public disclosure. (*Id.*)

The Sixth Circuit has addressed circumstances under which protecting sensitive business information justifies sealing documents filed in the court record. In *Brown*, the court found that

4

documents containing information gathered by a regulatory agency during its investigation of five tobacco companies had been improperly sealed by the district court. 710 F.2d at 1180–81. The court acknowledged "the natural desire of parties to shield prejudicial information contained in judicial records from competitors and the public." *Id.* at 1180. Nonetheless, the court found that protecting such information "cannot be accommodated by courts without seriously undermining the tradition of an open judicial system." *Id.* The court therefore instructed that "a court should not seal records unless public access would reveal legitimate trade secrets, a recognized exception to the right of public access to judicial records." *Id.* In *Shane*, the court found that documents filed in a class action suit alleging price-fixing by a health insurer were improperly sealed by the district court. 825 F.3d at 308. The court found that the insurer's concern about public access to "competitively-sensitive financial and negotiating information" contained in the documents was inadequate to justify sealing. *Id.* at 301–08. In doing so, the court emphasized that such information did not fall into the three categories of information that are typically sufficient to overcome the presumption of public access. *Id.* at 308. For example, the court found that the information at issue was "not entitled to protection as a legitimate trade secret." *Id.* Thus, as *Brown* and *Shane* make clear, confidential business information is not entitled to any special protection, and a party seeking to seal such information bears the burden of "showing that 'disclosure will work a clearly defined and serious injury.'" *Id.* at 307 (quoting *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001)).

Here, Tangram has failed to meet its burden of showing that a serious injury will result if its financial data is made public. Tangram does not articulate a particular injury or harm and it does not explain the nature and extent of such an injury or how it would arise from disclosure of the financial data in this case. These details are crucial for the Court's determination of whether

there is a compelling reason for sealing. *Shane*, 825 F.3d at 307. Instead, Tangram offers generalized, unsubstantiated statements that the financial data would provide competitors with an unfair advantage. (DN 57 at 1718.) Tangram also states that disclosure would thwart its efforts to "prohibit appraisers from considering Tangram's financial statements" in conducting appraisals but it does not elaborate further on why the prohibition is necessary or even sound business practice where a confidentiality provision, such as the one at issue here, might resolve that perceived risk. (*Id.*) Moreover, Tangram's financial data is distinguishable from the financial records at issue in *SMA Portfolio*. In *SMA Portfolio*, the records warranted closure because the court recognized the privacy rights of a bank's customers who were nonparties to the action and were unable to raise any objections. 2014 WL 12650589, at *3. Similarly, the bank customers protected by closure in *In re Knoxville* were third parties who were not responsible for the initiation of the underlying litigation and thus "possessed a justifiable expectation of privacy that their names and financial records not be revealed to the public." 723 F.2d at 477. In contrast, the Sixth Circuit refused to uphold disclosure of a party's business information because "simply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records." *Brown & Williamson*, 710 F.2d at 1178. "Even taking [Tangram] at its word regarding the serious business consequences at stake should [the financial data] be unsealed, more is required." *Rudd Equipment*, 834 F.3d at 498.

For the most part, Tangram's assertions merely indicate that it considered its financial data to be confidential and took efforts to maintain that confidentiality when contracting with Defendants. Even a more forceful "assertion that the documents are highly confidential and/or proprietary is not enough. These types of documents generally may be sealed only if they

6

constitute or include 'trade secrets.'" *In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, No. 18-MD-02818, 2022 WL 1138017, at *2 (E.D. Mich. Apr. 18, 2022) (quoting *Shane*, 825 F.3d at 308). Here, Tangram has not "even tried to demonstrate that any of the [information in the agreements] is comparable to a trade secret." *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 410 (6th Cir. 2006).

This Court has previously recognized a legitimate privacy interest in "sources of business information that might harm a litigant's competitive standing." See, e.g., *Kentucky v. Marathon Petroleum Co. LP*, No. 3:15-CV-354-DJH, 2018 WL 3130945, at *5 (W.D. Ky. June 26, 2018) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). In Exhibit 1, Tangram seeks to redact an attachment marked "Exhibit C" to VIG's appraisal report that is a chart containing specific line-by-line details of Tangram's quarterly financial data. (DN 57 at 1720.) The chart leaves no stone left unturned regarding Tangram's financial performance and provides more than what might be considered a high-level overview. The Court finds that this redaction is appropriate given the specificity of the financial data, which poses an increased risk to competitive harm, and because the level of specificity does not appear necessary to the analysis contained within the appraisal report, which already reflects relevant subsets of Tangram's financial data. For the remaining redactions, while Tangram claims that the financial data contains competitively sensitive information, it has not offered any explanation of how a competitor could use the information to undercut its standing in the marketplace. On a motion to seal, the movant must "show why [compelling] reasons outweigh the public interest in access to [the] records [in question] and [demonstrate] that the seal is narrowly tailored to serve that reason." *Kondash v. Kia Motors Am., Inc.*, 767 F. App'x 635, 637 (6th Cir. 2019) (quoting *Shane*, 825 F.3d at 305–06). "To do so, the party must 'analyze in detail, document by document, the propriety of secrecy,

providing reasons and legal citations.'" *Shane*, 825 F.3d at 305–06 (quoting *Baxter*, 297 F.3d at 548.) Here, Tangram offers no analysis, much less a document-by-document analysis. For example, Tangram fails to explain why certain data extracted from its financial statements is particularly sensitive, such as how it may affect pricing in the marketplace. Tangram also fails to acknowledge that the data is relevant to the core of the complaint.

Even if some information contained in the financial statements was so sensitive that disclosure could harm Tangram's interests, the public interest in access would prevail. At minimum, "[t]he public has a strong interest in obtaining the information contained in the court record." Shane, 825 F.3d at 305 (quoting Brown, 710 F.2d at 1180). As Tangram notes, Exhibits 1 and 2 are "central to Defendants' motion to dismiss." (DN 35 at 545.) Nevertheless, Tangram asserts that its proposed redactions would not impair the public's interest because the public will "have access to the substance of VIG and JLL's analysis." (DN 57 at 1719-20.) The Court disagrees. The substance of VIG and JLL's analysis relies, at least partially, on Tangram's financial data and the two cannot be separated at this stage of the litigation where the interest in public access is heightened. Generally, "[s]ecrecy is fine at the discovery stage." *Shane Grp. Inc.*, 825 F.3d at 305. (quoting *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002)). "At the adjudication stage, however, very different considerations apply." *Id.* (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)). And when evidence is presented to a court for a final decision in a case, transparency is critical because "the public is entitled to assess for itself the merits of judicial decisions." *Id*. In the underlying motion to dismiss, Defendants assert that VIG and JLL utilized various appraisal methodologies to determine Tangram's annual fair market rent. (DN 29 at 416-18). VIG elected to follow a Sales Comparison Approach appraisal through which it analyzed the costs of rehabilitative facilities comparable to Tangram and employed the

comparison data to determine Tangram's fair market rent. (*Id.* at 406.) Although VIG did not use Tangram's financial data for its analysis, Tangram's financial statements were nonetheless used to test the reliability of VIG's Sales Comparison Approach valuation. (*Id.* at 417.) Similarly, JLL determined Tangram's fair market rent by averaging the outcome of two appraisal approaches, the Sales Comparison Approach and the Income Capitalization Approach. (*Id.* at 407-08.) The Income Capitalization Approach specifically involved an analysis of Tangram's financial statements to determine Tangram's fair market rent. (*Id.*) Both VIG and JLL's appraisals were then averaged to determine the rent that Tangram currently pays. (*Id.*) Tangram alleges that this rent is excessive and seeks damages "equal the difference between what the rent would have been without the inflated appraisals based on Tangram's financial performance, and the rent that is now being paid." (DN 1 at 10-11.) Tangram's financial data undeniably played a role in both appraisals at issue here and challenging the legitimacy of the appraisals has necessarily implicated the reliability of the underlying appraisal methods. Tangram's financial data is likely relevant to Defendants' alleged contractual breach and may be offered as evidence on the merits of the case, where the public would have a substantial interest in knowing what evidence exists (or does not exist) to show the extent of Defendants' violative conduct.

## IV. ORDER

For the foregoing reasons,

IT IS HEREBY ORDERED that Tangram's Motion for Leave to File Under Seal is **GRANTED in part** and **DENIED in part**. On or before **April 15, 2023**, Tangram shall file supplementary redacted versions of DN 58 consistent with this Order.

*[Signature]*

Colin H Lindsay, Magistrate Judge
United States District Court

March 14, 2023

cc: Counsel of record